**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WILLIAM OCAMPO,**

                      **Petitioner,**          **1:04-CV-0729**
 **v.**                                                        **(NAM)**
                                                             **Related Criminal Action**
**UNITED STATES OF AMERICA,**          **1:01-CR-0361**

                      **Respondent.**
_____

**APPEARANCES**                              **OF COUNSEL:**

**FOR THE PETITIONER:**

**WILLIAM OCAMPO**
Petitioner, *pro se*
36192-053
Allenwood Low
P.O. Box 1000
White Deer, PA 17887

**FOR THE RESPONDENT:**

**OFFICE OF THE UNITED**           **TINA E. SCIOCCHETTI, Esq.**
**STATES ATTORNEY**                 Assistant U.S. Attorney
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207-2924

**NORMAN A. MORDUE**
**Chief, United States District Judge**

## DECISION AND ORDER

**I.**      **BACKGROUND**[1]

---

[1] The background information contained in this Decision and Order is derived from the documents filed in the present civil action, *Ocampo v. United States*, 1:04-CV-0729 ("04-CV-0729"), as well as the related criminal matter, *United States v. Ocampo*, 1:01-CR-0361 (N.D.N.Y.) ("01-CR-0361").

On February 10, 1992, petitioner, *pro se* William Ocampo, who is a citizen of Colombia, was deported from the United States after he completed his term of imprisonment for his conviction in the Eastern District of New York of the aggravated felony of possessing with intent to distribute cocaine. *See* Plea Agreement of William Ocampo (11/8/01) (01-CR-0361, Dkt. No. 9) ("Plea Agreement") at ¶ 5. In or about October, 1997, Ocampo re-entered the United States without having first obtained the express permission of the United States Attorney General to re-enter this country.[2] Plea Agreement at ¶ 5.

On June 1, 1998, Ocampo was arrested in Suffolk County, New York and charged with criminal possession of a controlled substance in the third degree and second degree conspiracy. *See* 04-CV-0729, Dkt. No. 5 at Attachment 4, ¶ 31. Ocampo eventually plead guilty to the crime of attempted second degree conspiracy and was thereafter sentenced to an indeterminate term of four to eight years imprisonment. *Id.*, ¶ 30. While incarcerated at the Ulster Correctional Facility for that crime, an immigration officer eventually learned that Ocampo had illegally re-entered the United States after having been previously deported from this country. Plea Agreement at ¶ 5. Following further investigation into the matter, a federal grand jury of the Northern District of New York subsequently returned an indictment against Ocampo in which he was charged with illegally re-entering the United States after deportation, in violation of 8 U.S.C. § 1326. *See* 04-

---

[2] The failure of a deported alien to seek permission from the United States Attorney General to reapply for admission to the United States is a criminal offense. *See* 8 U.S.C. § 1326. This statute provides, in part, that any alien convicted of an aggravated felony who has been deported and thereafter enters the United States without the express consent of the Attorney General "shall be fined under [Title 18], ... imprisoned not more than 20 years, or both ...." *See* 8 U.S.C. § 1326(b). The Code of Federal Regulations details the manner in which such express permission may be obtained. *See* 8 C.F.R. § 212.2; *see also United States v. Martus*, 138 F.3d 95, 97 (2d Cir. 1998).

CV-0729, Dkt. No. 5 at Attachment 1 ("Indictment"). The Federal Public Defenders Office for the Northern District of New York was thereafter appointed to defend Ocampo concerning the criminal charge brought against him, 01-CR-0361, Dkt. No. 5, and on November 8, 2001, Ocampo executed a plea agreement in which he agreed to plead guilty to the Indictment. 01-CR-0361, Dkt. No. 9.

At the proceeding held by this Court relating to Ocampo's change of plea, the Government discussed (in the presence of Ocampo) the factual basis for his plea and noted that, for purposes of sentencing, his criminal history category was III and his total offense level was twenty-four. *See* Transcript of Change of Plea (11/8/01) (04-CV-0729, Dkt. No. 5 at Attachment 3) ("Plea Tr.") at pp. 12-13.[3] At that proceeding, both this Court and the Government noted that Ocampo agreed, in his plea agreement, to waive his right to appeal any sentence of imprisonment of seventy-eight months or less. Plea Tr. at pp. 15, 19.

On March 7, 2002, Ocampo appeared before this Court for sentencing.[4] At that proceeding, this Court determined that petitioner's total offense level of twenty-one,[5] combined

---

[3] In the Plea Agreement, Ocampo conceded that although the base offense level for his crime was eight, his offense level was nevertheless subject to a sixteen point enhancement in light of the fact that he had previously been convicted of a drug trafficking offense for which the sentence imposed exceeded thirteen months. *See* Plea Agreement at ¶ 8(b); Plea Tr. at p. 14; *see also* United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G."), § 2L1.2(b). Consequently, petitioner's total offense level, excluding any downward adjustment, was twenty-four.

[4] The sentencing minutes improperly indicate that Ocampo was sentenced on March 7, 200*3*. *See* Sentencing Tr. at p. 1. However, the criminal docket in the underlying criminal matter accurately reflects that Ocampo's sentencing occurred on March 7, 2002. *See* 01-CR-0361, Dkt. No. 16. Furthermore, the judgment of conviction relating to Ocampo following his sentencing was signed by this Court on March 19, 2002. *See* 01-CR-0361, Dkt. No. 17.

[5] Ocampo's offense level of twenty-four was reduced by this Court to twenty-one due to petitioner's acceptance of responsibility for his crime. *E.g.*, 04-CV-0729, Dkt. No. 5 at

with his criminal history category of IV, subjected Ocampo to a range of imprisonment under the Sentencing Guidelines of between fifty-seven to seventy-one months.  *See* Transcript of Sentencing of William Ocampo (3/7/02) (01-CR-0361, Dkt. No. 22) ("Sentencing Tr.") at pp. 11-12.  This Court thereafter principally sentenced Ocampo to a term of fifty-seven months imprisonment.[6]  Sentencing Tr. at p. 12.

Ocampo filed a Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 on June 18, 2004.  *See* 04-CV-0729, Dkt. No. 1 ("Motion to Vacate") at p. 7.  In his application, movant alleges that his trial counsel rendered ineffective assistance by:  i) failing to file and pursue an appeal on behalf of Ocampo; and ii) failing to object when this Court increased petitioner's total offense level by sixteen levels, thereby subjecting petitioner to a longer range of imprisonment under the Sentencing Guidelines.  *See* Motion to Vacate at pp. 5-6.

On August 6, 2004, the Government, through the United States Attorney for the Northern District of New York ("United States Attorney"), filed its memorandum in opposition to petitioner's Motion to Vacate.  *See* 04-CV-0729, Dkt. No. 5 ("Resp. Mem.").  In opposing Ocampo's application, the United States Attorney argues, *inter alia*, that the present Motion to Vacate is untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

---

Attachment 4, ¶¶ 20-21.

[6]  Ocampo's federal sentence was ordered to run consecutive to the state sentence petitioner was then-serving in light of U.S.S.G. § 5G1.3.  That section provides, *inter alia*, that where the federal offense for which the defendant is to be sentenced "was committed while the defendant was serving a term of imprisonment ... the sentence for the [new] offense shall be imposed to run consecutively to the undischarged term of imprisonment."  *See* U.S.S.G. § 5G1.3(a); *see also United States v. Londono-Jimenez*, No. 99 CR. 81-01, 2000 WL 1593381, at *3-4 (S.D.N.Y. Oct. 25, 2000) ("for purposes of Guidelines § 5G1.3, [petitioner's] offense [of illegally re-entering the United States] was committed while he was imprisoned, rendering the applicable Guidelines section to be § 5G1.3(a).").

*See* Resp. Mem. at pp. 6-8.  Ocampo has filed a reply memorandum of law in further support of his Motion to Vacate.  *See* 04-CV-0729, Dkt. No. 6 ("Reply").

In light of Ocampo's claim that his counsel failed to comply with petitioner's request to file an appeal, on July 28, 2006 this Court conducted an evidentiary hearing to determine whether the petitioner instructed his attorney to file an appeal.  *E.g.*, *Campusano v. United States*, 442 F.3d 770, 777 (2d Cir. 2006) (where petitioner alleges that his attorney wrongfully failed to file an appeal, district court is to conduct evidentiary hearing to determine whether such claim has substance).  Both Ocampo and his attorney in the underlying criminal proceeding, Kent Sprotbery, Esq., testified at that proceeding.[7]  Additionally, various documents submitted by the parties were received into evidence at that hearing.

After considering all of the evidence received at that hearing, together with the briefs filed by the parties in this civil action and relevant documents filed in the related criminal matter, this Court issued a bench decision at the conclusion of the July 28, 2006 hearing in which this Court found that the evidence conclusively established that Ocampo did not ask Attorney Sprotbery to file any appeal on Ocampo's behalf in the underlying criminal matter.  *See* 04-CV-0729, Dkt. No. 10.

## II.    DISCUSSION

In light of this Court's finding that Ocampo did not request that Attorney Sprotbery file any appeal on Ocampo's behalf, this Court may now properly consider respondent's initial argument in opposition to the present action, which claims that this proceeding was not timely

---

[7] William R. Bartholomae, Esq. was appointed by this Court to represent Ocampo in conjunction with that evidentiary hearing.

commenced by Ocampo. *See* Resp. Mem. at pp. 6-8.

Following the enactment of the AEDPA, 28 U.S.C. § 2255 now provides that motions to vacate brought under that section are subject to a one year statute of limitations. *See* 28 U.S.C. § 2255, ¶ 6. Under 28 U.S.C. § 2255, the AEDPA's limitation period begins to run from, *inter alia*, "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255, ¶ 6(1).

In the underlying criminal action, the judgment of conviction was entered against Ocampo on March 19, 2002. *See* 01-CR-0361, Dkt. No. 17. Pursuant to FED.R.APP.P. 4(B), petitioner was required to file his notice of appeal within ten days of the entry of that judgment of conviction. *See id.*; *see also United States v. Montoya*, 335 F.3d 73, 74 (2d Cir. 2003). Since petitioner did not file any appeal relating to his conviction or sentence, his conviction became "final" the day after his time to file an appeal expired, i.e., April 3, 2002.[8] *See Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005); *Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000).

In contesting respondent's claim that this matter was untimely filed, petitioner initially argues that this matter was commenced less than one year after the applicable statute of limitations began to run concerning his § 2255 motion. *See* Reply at p. 4. In support of this claim, Ocampo notes that a "Sentence Monitoring Computation Data" sheet apparently prepared by the Bureau of Prisons ("BOP") indicates that Ocampo was committed to the custody of the BOP on November 13, 2003. *See* Reply, Exh. B. Petitioner argues that because this action was

---

[8] The Court notes that Rule 6(a) of the Federal Rules of Civil Procedure provides, in pertinent part, "[i]n computing any period of time prescribed or allowed by these rules ... [w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation;" *see also* Rule 12 of the Rules Governing Section 2255 Proceedings in the United States District Courts ("the Federal Rules of Civil Procedure ... to the extent that they are not inconsistent with any statutory provision or these rules, may be applied to a proceeding under these rules").

filed by him on June 18, 2004 – less than one year after he began serving his federal sentence – the present proceeding was timely commenced by petitioner. *See* Reply at p. 4.

Unfortunately for Ocampo, this argument fails to recognize the fact that the time at which the limitations period of the AEDPA commences is specifically addressed in that statute. Specifically, 28 U.S.C. § 2244(d) provides that the AEDPA's statute of limitations:

shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

None of the language in the foregoing statute suggests that the AEDPA's limitations period does not begin to run until the person convicted of the federal offense actually begins serving the federal sentence imposed on him. Nor has this Court's research disclosed any case authority that stands for such proposition. Thus, this argument of petitioner is unavailing.

Therefore, since this Court has determined that movant never requested that his trial counsel file a notice of appeal on his behalf, this action – which was filed no earlier than June 18,

7

2004 (*see* Motion to Vacate at p. 7) – is patently untimely unless Ocampo is entitled to an equitable tolling of the AEDPA's limitations period. *See, e.g.*, *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001) (equitable tolling is available for petitions filed pursuant to 28 U.S.C. § 2255).

In *Pace v. DiGuglielmo*, the Supreme Court noted that the AEDPA's statute of limitations may only be equitably tolled when the petitioner establishes the following:  1) that he pursued his rights diligently; and 2) that some extraordinary circumstance prevented him from timely filing his action. 544 U.S. 408, 418 (2005).

The Court's review of the present civil action establishes that petitioner has not pursued his rights diligently.  Although petitioner now appears to lay the blame for his inaction at the feet of his trial attorney, *see* Reply at pp. 2-4, it is clear that such argument is rooted in his claim that his attorney failed to comply with petitioner's alleged request to pursue an appeal in the underlying criminal action.  *See id.*  However, this Court has already determined that Ocampo's claim that he directed his counsel to pursue an appeal is without substance.  Thus, Ocampo cannot properly attribute his delay in filing the present Motion to Vacate to the claimed inactions of Attorney Sprotbery.

Petitioner also argues that while he was incarcerated for his crime of attempted second degree conspiracy, he was incarcerated "in a State prison without access to any meaningful federal law."  Reply at p. 4.  Thus, petitioner appears to suggest that he was prevented from preparing his Motion to Vacate until such time as he was incarcerated in a federal correctional institution because the law libraries in his state facility were inadequate. *See id.*  Since Ocampo has not cited any specific deficiencies concerning the law libraries of the facilities in which he

8

was incarcerated as support for his claim, it appears as though petitioner is making a general claim that inmates incarcerated in New York State's Department of Correctional Services ("DOCS") cannot adequately prepare and/or research claims rooted in federal law. That claim is specious.

This Court has reviewed countless petitions, complaints and other filings submitted by inmates who are incarcerated throughout the state. Nearly all of those submissions are based upon a claim that the inmate's federal statutory or constitutional rights have been violated by others. It is clear from those numerous filings that inmates incarcerated in the DOCS are well equipped to assert such claims in federal courts notwithstanding the fact that they are incarcerated in state-operated prisons.[9]

In *Green*, the Second Circuit cautioned federal district courts that the equitable tolling of AEDPA's the statute of limitations "applies only in ... rare and exceptional circumstance[s]." 260 F.3d at 82 (citing *Smith v. McGinnis*, 208 F.3d 13, 17 (2000)); *see also United States v. Rodriguez*, ___ F.Supp.2d ___, 2006 WL 1975811, at *1 (S.D.N.Y. July 14, 2006). Nothing in the record suggests that Ocampo was prevented from timely commencing this action by any "extraordinary circumstance." *Pace*, 544 U.S. at 418. Additionally, the facts of this case do not demonstrate that the circumstances relating to this case are rare or exceptional such that petitioner should be afforded an equitable tolling safe harbor from the dismissal of his petition based upon the AEDPA's one year limitations period. Therefore, the Court hereby dismisses Ocampo's §

---

[9] In this aspect of his claim for habeas relief, Ocampo also argues that he has experienced "language difficulties" in conjunction with researching the grounds for his Motion to Vacate. *See* Reply at p. 4. However, petitioner has wholly failed to establish that he could not timely file the Motion to Vacate he eventually filed with the Court because of difficulties he experienced in writing his application in the English language.

2255 motion as untimely filed.

### III.  CONCLUSION

After having carefully considered the evidence adduced at the evidentiary hearing conducted on July 28, 2006, and having reviewed the file in this matter and the related criminal action, the parties' submissions, the applicable law, and for the reasons stated herein, it is hereby

**ORDERED,** that petitioner's Motion to Vacate is **DENIED**, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on the parties by electronic or regular mail.

**IT IS SO ORDERED.**

DATE:  August 24, 2006

_____
Norman A. Mordue
Chief United States District Court Judge